**UNITED STATES of America,
Appellee,**

v.

**Roger Grant NEWTON, Appellant.**

**No. 25630.**

United States Court of Appeals,
Ninth Circuit.

Dec. 15, 1970.

---

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

Tom Kotoske (argued), Asst U. S. Atty., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY and WRIGHT, Circuit Judges.

BARNES, Circuit Judge:

Roger G. Newton, classified I–A–O by his local Board, was ordered to report for duty in the military as a noncombatant. He refused and was convicted for violation of the Universal Military Training and Service Act (50 U.S.C. App. § 462). On appeal he challenges the validity of his classification. We reverse.

Appellant was initially classified I–A–O by his local Board because of his conscientious objector beliefs and because he indicated he was willing to serve in noncombatant lines. Newton enrolled in college and received a II–S (Student) deferment. Upon leaving school he was classified I–A. He returned to school and was reclassified I–S.

Newton then notified the Board that he was now opposed to military service in any form. The Board considered appellant's new conscientious objector request and then classified him I–A. Newton appealed. His file was referred to the Justice Department for recommendation. After a personal appearance before the hearing officer, the Justice Department, following the conclusions of the officer, suggested that Newton was sincere as to his conscientious objection to combatant military participation but was not sincere as to his opposition to noncombatant military service. The Justice Department recommended that Newton be classified I–A–O. Appellant was so classified by the Board on April 25, 1968. Newton requested a personal appearance before the local Board to explain his beliefs and present new evidence. Four successive dates were arranged by the Board, but Newton was unable to attend any of the four for various reasons. He was ordered to report for noncombatant duty on November 12, 1968.

In determining the validity of Newton's classification, we follow the narrow standard of whether there is a basis in fact for the classification the Board assigned to Newton (Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428). The letter of recommendation from the Justice Department to the Board set forth two grounds to support the classification. One, that Newton's conscientious objections to military service in any form are not based on his religious training and belief. Two, that Newton's conscientious objector beliefs as to noncombatant service

are not sincerely held. We find that neither ground is sufficient to provide a basis in fact for Newton's I–A–O classification.

There is no question that Newton holds strong *religious* convictions regarding combatant military duty. The Board recognized this fact and classified Newton I–A–O. However, upon recommendation of the Justice Department, based upon its hearing officer's report, the Board concluded that Newton's objections to noncombatant service were not based upon religious teachings but were founded upon political and sociological beliefs. Newton's statements to the hearing officer are summarized in the Justice Department letter to the Board. Quoting from the letter:

"[Newton] advised that, prior to January, 1966, he believed that he could serve in the Armed Forces in a noncombatant capacity, but, after that date, had determined that he could not, in good conscience, even serve in a noncombatant status. He advised that his reasons for the change were personal beliefs which now prevent him from being a noncombatant. He advised that, if he were filling out an IBM card in the army, he would, in fact, be helping pull the trigger and take a life for economic or political gain. He said that he is opposed to killing under any circumstances, and to the use of force under any circumstances, and that this belief is based on religious teachings. The Hearing Officer concluded that the registrant is sincere in his objection to combatant military training and service; that the registrant's conscientious objections are based upon his religious training and belief; and that the registrant is not conscientiously opposed to noncombatant military training and service, in that this opposition to such service is based upon political and sociological beliefs only." [F. 116] [1]

The statements made by Newton do not support the conclusions drawn by the Department or its hearing officer. Nor is the conclusion of the Justice Department supported by the registrant's statements on his SSS Form 150. In it, Newton stated that among other things he had received his training and acquired his beliefs in the Seventh Day Adventist Church; through reading the Bible, the handbook for conscientious objectors, and the army field manual; from attending meetings sponsored by the American Friends Service Committee; and from reading material on and a discussion of reasons for the United States' policy with fellow students.

The sole reason given by the Justice Department to support its conclusion regarding the basis of Newton's beliefs is found in the letter to the Board.

"The registrant stated, at the hearing, that the basis for the extension of his claim to include an objection to noncombatant military training and service were [sic] his personal beliefs. These beliefs do not appear to involve a change in his religious faith. Accordingly, it appears that there is a basis in fact for a determination that the registrant is not opposed to noncombatant military training and service on the basis of his religious training and belief, *particularly since,* as he stated, *the Seventh Day Adventist Church members normally object only to combatant military training and service.*" [Emphasis added, F. 117]

This is the only rationale given for finding that there was a basis to determine that Newton's beliefs were not religious in nature. But this standard is erroneous. (Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308). Newton was not bound by the complete teachings of the Seventh Day Adventists. It was determined in United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, that one's objection to war may go beyond the dogma of the doctrines of one's church. In this instance, Newton stated that while

[1]. "F" refers to the Selective Service File.

most Adventists believe in noncombatant service, he felt that this would not be holding up his true values. Basing his conscientious objections in some degree on the teachings of the Adventists did not foreclose Newton from developing a strong religious and moral code which extended the basic doctrines of that church to total objection to participation in war in any form. The reason relied upon by the Justice Department was based on an improper standard and was therefore erroneous.

Under the holding of this Court in United States v. French, 429 F.2d 391 (9th Cir.1970), if the recommendation for classification from the Justice Department to the Board contains even one impermissible ground upon which the Board may have relied, the classification is without basis in fact. Consequently, this case may be reversed solely on the foregoing discussion. Nevertheless, the government urges quite strongly that the reason for the recommendation was Newton's insincerity. To support this the government lists four factors which it claims demonstrate Newton's insincerity. They are: (1) Newton's demeanor; (2) a statement given by a reference during the Justice Department investigation; (3) inconsistency in Newton's application for conscientious objector status; and (4) the late filing of his claim. None of these demonstrates insincerity in this instance.

Not a single objective fact or observation is recorded in the Justice Department's letter which lends credence to a conclusion of insincerity based on Newton's demeanor. Most certainly the hearing officer's assessment of the registrant's demeanor is entitled to weight. (White v. United States, 215 F.2d 782 (9th Cir.1954), but in this instance, the hearing officer made no statement whatsoever regarding Newton's demeanor or even that the demeanor influenced him

in any way. Notably, he did not find the demeanor to be such as to warrant disbelief of his conscientious objection to combatant war.

The statement given by a "co-religionist * * * who was also a physician friend and reference of the registrant" [F. 125] is cited as indicative of insincerity. The reference states that " * * * the registrant is not active in his church and [the reference] feels that the registrant is hiding behind his church in an effort to invade [sic] his duty to his country." [F. 125] If this statement was entitled to any weight, it could not be used to support a finding of insincerity as to Newton's noncombatant objection and not be used with reference to Newton's combatant objections.[2]

■ Inconsistency in Newton's application for conscientious objector status cannot support a finding of insincerity. To so hold would be to hold that a registrant who was originally opposed only to combatant war could never develop a sincere religious or philosophical belief against noncombatant war because such would be inconsistent with his original position. Such reasoning is defective on its face.

■ Finally, the lateness of Newton's claim does not show he was insincere. At the time he made his second application for conscientious objector status, he was classified I–S, which was a lower priority than the I–O classification Newton later sought. Unlike the Court's decision in Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, which holds that successive claims for other classifications are objective evidence that a later claim of conscientious objection to war is insincere only when the registrant's prior applications are inconsistent with his conscientious objection claim, we find that Newton's applications for a student de-

2. The government seeks to characterize Newton's argument as an "all or nothing" approach to a conscientious objector claim. However, the proper view of Newton's position is that the evidence and state- ments presented by Newton could not be used to support a finding of insincerity in one instance and disregarded or used to support a conclusion of sincere belief in another.

ferment were not inconsistent with his later claim of conscientious objection to war. The fact that he did not express his objections at the time he applied for the deferment, which was a lower priority, cannot in itself justify a finding of insincerity.

Because none of the four factors cited by the government supports a finding of insincerity with respect to Newton's noncombatant objection in this instance, there was no basis in fact for Newton's I–A–O classification and his conviction based thereon must be reversed.